VENABLE LLP
Rockefeller Center
1270 Avenue of the Americas, 24th Floor
New York, New York 10020
Telephone: (212) 307-5500
Jeffrey S. Sabin
Kostas D. Katsiris
*Counsel for Highland Capital Management LP*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

----------------------------------------------------------x
:
In re                                             :    Chapter 15
:
OCEAN RIG UDW, INC., et al.                       :    Case No. 17- 10736 (MG)
:
    Debtors in a Foreign Proceeding.             :    Jointly Administered
:
----------------------------------------------------------x

**MEMORANDUM OF LAW IN FURTHER SUPPORT OF LIMITED OBJECTION
OF HIGHLAND CAPITAL MANAGEMENT LP
TO THE MOTION FOR (I) *EX PARTE* EMERGENCY RELIEF
AND (II) PROVISIONAL RELIEF
<u>PURSUANT TO 11 U.S.C. §§ 1519, 1521(a)(7), AND 362</u>**

    Highland Capital Management LP, on behalf of certain of its or its affiliates' funds and managed accounts (collectively, "Highland"), respectfully submits this Memorandum of Law, and the Affidavit of Stephen Gradwell Leontsinis attached hereto as Exhibit A, in further support of its Limited Objection (the "Objection") [Dkt. No. 25] to the *Motion for Ex Parte Relief and (II) Provisional Relief Pursuant to 11 U.S.C. §§ 1519, 1521(a)(7), and 362* [Dkt. No. 8] (the "Motion"), filed by the joint provisional liquidators and foreign representatives (collectively, the "Provisional Liquidators") of Ocean Rig UDW, Inc. and its affiliated debtors (collectively, the "Debtors").[1]

---

[1] All capitalized terms not otherwise defined herein shall have the same meaning as assigned to such terms in the Objection.

1

**PRELIMINARY STATEMENT**

In 2005, Congress enacted chapter 15 of the United States Bankruptcy Code to incorporate the United Nations Commission on International Trade Law's Model Law on Cross-Border Insolvency (the "Model Law").  As the legislative history of Section 1501 of the Bankruptcy Code explains, chapter 15 proceedings are intended to be ancillary to cases brought in a debtor's home country "unless a full United States bankruptcy case is brought under another chapter." H.R. Rep. No. 109-31(I), at 106 (2005), 2005 WL 832198.  Because a foreign representative must first obtain recognition of a foreign proceeding before he can bring a full case, chapter 15 is the foreign representative's means for accessing the United States bankruptcy system. This is not true of creditors who, by virtue of Section 303(b), have the unfettered right to seek relief under the Bankruptcy Code.  This distinction makes sense when one considers that one purpose of a chapter 15 recognition proceeding is to promote efficiency and cooperation with other sovereigns, while the purpose of permitting creditors to file an involuntary petition against a party unable to pay its debts is focused on protecting those creditors' interests in the assets of an insolvent debtor – assets which equitably belong to creditors.[2]  Nonetheless, the question of whether a creditor can file an involuntary petition after foreign representatives have filed a petition for recognition is a case of first impression and the determination of this issue is of great importance to the interpretation of creditors' rights in a chapter 15 proceeding.

Nothing in the Bankruptcy Code restricts a creditor's right to file an involuntary petition under Section 303 other than the imposition of the automatic stay under Section 362(a).  The filing of a chapter 15 petition for recognition does *not* trigger the imposition of the 362(a) stay

---

[2] *See* S. Rep. 95-989, at 32-33 (1978), 1978 WL 8531 ("Because the assets of an insolvent debtor belong equitably to his creditors, the bill permits involuntary cases in order that creditors may realize on their assets through reorganization as well as through liquidation.")

2

(nor create section 541 estate property, including avoidance actions the proceeds of which would belong to all creditors), and Section 1520(c) expressly preserves creditors' rights to file an involuntary petition even post-recognition, when a stay is imposed under Section 1520(a). Congress specifically preserved creditors' 303(b) filing rights by providing that the stay of actions imposed by a recognition order "does not affect the right of a foreign representative or *an entity* to file a petition commencing a case under this title." 11 U.S.C. § 1520(c) (emphasis added). At least one commentator, former Texas Bankruptcy Judge Leif Clark, has recognized that Section 1520(c) specifically allows creditors to file an involuntary case any time before or after the filing of a recognition petition, including during the gap period between the filing of a petition and the determination of whether to enter a recognition order. Congress has made clear that the interests of comity and cooperation served by giving foreign representatives access to U.S. bankruptcy courts do not trump the United States' interest in protecting creditors and permitting them access to the U.S. bankruptcy system.

Consistent with the plain language of Section 1520(c), Section 1529 contemplates that an involuntary case may be filed any time before or after a petition for recognition has been filed, so long as any relief granted in the chapter 15 case is coordinated with the relief granted in the chapter 7 or chapter 11 case. The legislative history acknowledges this right when explaining that, if necessary and appropriate, "the court has ample authority under [Section 1529] and section 305 to exercise its discretion to dismiss, stay or limit a United States case filed after a petition for recognition . . . has been filed but before it has been approved." H.R. Rep. No. 109-31(I), at 117 (2005), 2005 WL 832198.

On the other hand, where the drafters wanted to restrict an entity's right to file an involuntary petition, they did so unambiguously. Though Section 303(b)(4) generally permits a

3

foreign representative to file an involuntary case, once a foreign representative files a petition for recognition and seeks access to U.S. bankruptcy courts, Section 1511 of the Bankruptcy Code limits his or her right to commence a full bankruptcy case until *after* he or she obtains a recognition order. Section 1511 states, "*[u]pon recognition*, a foreign representative may commence – (1) an involuntary case under section 303; or (2) a voluntary case under section 301 or 302, if the foreign proceeding" is a main proceeding." (*See* 11 U.S.C. § 1511). To make this limitation clear, the legislative history of Section 1501 states, "an order granting recognition is required as a prerequisite to the use of Sections 301 and 303 by a foreign representative." H.R. Rep. No. 109-31(I), at 106 (2005), 2005 WL 832198. If a foreign representative who has filed a chapter 15 petition wants to thereafter file an involuntary or voluntary petition, Section 1511(b) requires the representative to submit a certified copy of the recognition order with his or her bankruptcy petition. 11 U.S.C. § 1511(b). The unmistakable conclusion is that a foreign representative cannot invoke the assistance afforded under chapter 15 and also gain access to the rights under chapters 7 or 11 until a determination is made whether to recognize the foreign proceeding. No such limitation is imposed on creditors, nor should there be, as the fact that a foreign entity has filed a proceeding in a foreign jurisdiction should have no bearing on the right of United States creditors to obtain the relief and protection afforded by United States law.

Not only does the Bankruptcy Code permit creditors like Highland to file an involuntary petition against the Debtors, but public policy and the equities of these cases dictate that this Court permit the prompt exercise of these rights by modifying the current Provisional Relief Order (as defined herein). The most important reason to modify the Provisional Relief Order is that, unless an involuntary petition is filed, there is currently no entity or person with the authority to file the avoidance actions to recover the millions of dollars of cash that were

4

knowingly and intentionally siphoned from the Debtors, at the expense of their creditors and shareholders, in order to enrich certain officers and directors personally and entities they control.[3] Under the Cayman Orders, the Provisional Liquidators do not currently have the right to sue for fraudulent disposition in the Cayman Islands, and they cannot sue for avoidance in chapter 15, because such actions are not the Debtors' property under Section 1528 of chapter 15. Highland and other creditors are unable to sue for avoidance in the Cayman Islands without leave of the Cayman Court, because entry of a provisional liquidation order stays all actions against the Debtors. A chapter 7 trustee or a chapter 11 debtor may, however, using the section 541 property created upon the filing of the involuntary petition, commence an avoidance action under Section 544 and New York Debtor and Creditor Law to seek recovery of fraudulently conveyed property on behalf of all of the Debtors' creditors.[4]

It is critical to note in this case that the RSA contemplates that the Notes will be discharged under the Debtors' Schemes of Arrangement. If an involuntary case is not commenced prior to the proposed Schemes of Arrangement being sanctioned by the Cayman Court, Highland and other noteholders will no longer be deemed creditors of the Debtors and will lose their standing to sue for fraudulent conveyance in a subsequent U.S. bankruptcy case. The proposed Schemes of Arrangement would effectively release the claims of creditors against the Debtors' insiders, a sweeping non-consensual, third-party release negotiated by a handful of senior lenders and these same insiders (who, under the Schemes of Arrangement, will receive

---

[3] *See Affidavit of Stephen Gradwell Leontsinis* ("Collis Crill Affidavit") ¶¶ 56-60 (attached hereto as Exhibit A).

[4] Highland, other creditors and an official committee could also seek standing to sue for avoidance and recovery on behalf of all creditors by filing a motion with the Court. *See Unsecured Creditors Committee of Debtor STN Enterprises, Inc. v. Noyes (In re STN Enterprises)*, 779 F.2d 901 (2d Cir. 1985) (Conferring standing upon a creditors' committee to sue on behalf of the estate when the debtor has failed to bring the action itself, subject to the requirements set forth therein).

5

compensation of over $200 million, including receiving a 10-year management agreement, 9.5% of new equity and continued control of the Debtors' Board of Directors) that violates U.S. public policy and harms, rather than protects, non-consenting creditors. This result would be manifestly contrary to the public policy of the United States and the dictates of the Second Circuit.

Moreover, as a matter of public policy, the stated purposes of chapter 15 are best served by the concurrent commencement of a chapter 7 or chapter 11 case. Section 1501(a) states that the purposes of chapter 15 are, among other things, to protect and maximize the value of the debtor's assets and to ensure the fair and efficient administration of cross-border insolvencies that protects the interests of *all* creditors. To the extent the Debtors' assets were fraudulently transferred to insiders or others, the only way to recover these assets, protect the creditors' and shareholders' interests, and maximize value is to commence a case in the United States that will permit a trustee (or Highland and other creditors) to bring New York state avoidance actions. In addition, there are several ways in which bankruptcy cases protect the interests of creditors that are not available in the Debtors' Cayman Islands winding up proceedings, such as the United States requirements for the filing of a debtor's schedules and statement of financial affairs, rights of parties-in-interest to take discovery, request information and examine witnesses and affiants, the appointment of a committee to represent the interests of unsecured creditors, and the presence of a United States Trustee as an independent overseer.[5] For all these reasons, Highland and other creditors are entitled as a matter of law to file an involuntary case against the Debtors.

---

[5] The Board of Directors of the Debtors have preserved their rights to commence a chapter 7 or chapter 11 petition, whether before, or in response to, any involuntary case commenced against them, thus the filing of an involuntary petition would not prejudice the Debtors. *See* Cayman Orders ¶ 6.

**BACKGROUND**

On April 7, 2017, this Court entered an Order Granting Provisional Relief [Dkt. No. 41] (the "Provisional Relief Order"), in these cases pursuant to which, among other things, the Court stayed certain actions against the Debtors and their Assets but held that the order was without prejudice to the Court's continuing consideration and adjudication of the relief requested in Highland's Objection.  For a recitation of the facts underlying the Provisional Relief Order and these cases, Highland respectfully refers the Court to the Motion and the Objection and requests that this Court take judicial notice of the record made in, and the pleadings filed on the docket of, these cases as well as the Debtors' public filings with the Securities and Exchange Commission.

**ARGUMENT**

**THE PROVISIONAL RELIEF ORDER SHOULD BE MODIFIED
TO PERMIT HIGHLAND AND OTHERS TO FILE
AN INVOLUNTARY PETITION AGAINST THE DEBTORS**

**A.    The Statutory Provisions of the Bankruptcy Code Preserve Highland's Right to File an Involuntary Petition Even After a Petition for Recognition under Chapter 15 is Filed**

Generally, the Bankruptcy Code authorizes an unsecured (or undersecured) creditor to file an involuntary petition against a debtor, subject to satisfying certain requirements contained in Section 303, and nothing in the Bankruptcy Code or relevant case law limits that right in the context of a chapter 15 proceeding.  Section 303(b)(1) provides, in relevant part:

> (b) An involuntary case against a person is commenced by the filing with the bankruptcy court of a petition . . . –
>
> (1) by three or more entities, each of which is either a holder of a claim against such person that is not contingent as to liability or the subject of a bona fide dispute as to liability or amount, or an indenture trustee representing such a holder, if such . . . claims aggregate at least $15,775 more than the value of any lien on property of the debtor securing such claims. . . .

7

11 U.S.C. §303(b)(1). Section 303 also authorizes a foreign representative to file an involuntary case. 11 U.S.C. §303(b)(4) ("An involuntary case is commenced by the filing of a petition . . . by a foreign representative of the estate in a foreign proceeding . . ."). Only the imposition of the automatic stay upon the filing of a chapter 7 or chapter 11 petition restricts creditors from filing an involuntary petition and gaining access to the bankruptcy system.[6] The filing of a chapter 15 petition does not trigger the automatic stay, and Section 103 of the Bankruptcy Code expressly makes Section 362 inapplicable to chapter 15 proceedings. 11 U.S.C. § 103(a) ("chapters 1, 3 and 5 of this title apply in a case under chapter 7, 11, 12 or 13 of this title."). Contrary to the broad grant of authority given to creditors to file an involuntary petition, Congress included provisions in chapter 15 that restrict a foreign representative's rights to obtain access to federal and state courts, including bankruptcy courts, until after the foreign representative has obtained recognition.

        **1.**       **Broad Rights Reserved for Entities other than the Foreign Representative**

The rights granted to creditors under Section 303(b) are explicitly preserved under Section 1520(c) of the Bankruptcy Code, even when other actions are expressly stayed by Section 1520(a). Section 1520(c) provides:

> (c) Subsection (a) [which imposes a stay and grants other rights upon recognition of a foreign proceeding] does not affect the right of a foreign representative or an entity to file a petition commencing a case under this title or the right of any party to file claims or take other proper actions in such a case.

11 U.S.C. § 1520(c). Section 1520(c) clarifies what might otherwise have been ambiguous in the statute: though Section 1520(a) makes reference to the imposition of a Section 362(a) stay upon recognition of a foreign proceeding, the Section 362(a) automatic stay that is triggered by

---

[6] The filing of a chapter 12 (family farmer) or chapter 13 (individual wage earner) case also triggers the automatic stay, but neither of these chapters is relevant to the instant case.

the filing of a chapter 7 or 11 case is not triggered by the filing of a chapter 15 petition and does not otherwise bar creditors from filing an involuntary petition. In addition, unlike the relief granted only upon recognition under Section 1520(a), the right granted to creditors to file an involuntary petition under Sections 303 and 1520(c) is not dependent on recognition. The Honorable Judge Leif Clark, a retired judge from the U.S. Bankruptcy Court for the Western District of Texas, in providing commentary on chapter 15 proceedings, has recognized that Section 1520(c) provides that entities other than the foreign representative may file an involuntary case against the debtor during the gap period between the filing of a petition and the determination of whether to enter a recognition order. Judge Clark explains:

> [S]ection 1520(c) provides that the stay arising by virtue of section 1520(a) does not prevent the commencement of a full [i.e., chapter 7 or chapter 11] bankruptcy case under the U.S. bankruptcy law by any party.

*A. Collier Monograph*: *Ancillary and Other Cross-Border Insolvency Cases Under Chapter 15 of the Bankruptcy Code* (hereinafter, "*Collier Monograph*"), ¶ 7[2].

Finally, consistent with the express language of Section 1520(c), Section 1529 contemplates that an involuntary case may be filed regardless of whether a petition for recognition has been filed or a recognition order has been entered, so long as relief granted in the chapter 15 proceeding is coordinated with the relief granted in the chapter 7 or chapter 11 case. Section 1529 provides, in relevant part:

> (1) If the case [under another chapter of this title] in the United States is pending at the time the petition for recognitions of such foreign proceeding is filed –
>
> (A) any relief granted under section 1519 or 1521 must be consistent with the relief granted in the case . . .; and
>
> (B) section 1520 does not apply even if such foreign proceeding is recognized as a foreign main proceeding.

9

> (2) If a case in the United States under this title commences after recognition, *or after the date of the filing of the petition for recognition*, of such foreign proceeding –
>
> > (A) any relief in effect under section 1519 or 1521 shall be reviewed by the court and shall be modified or terminated if inconsistent with the case in the United States;[7] and
>
> > (B) if such foreign proceeding is a foreign main proceeding, the stay and suspension referred to in section 1520(a) shall be modified or terminated if inconsistent with the relief granted in the case in the United States.

11 U.S.C. §1529. (emphasis added)

As further indicia of Congress's intent to preserve creditors' rights to file an involuntary petition, even after a chapter 15 petition has been filed, Section 1529 acknowledges that chapter 7 and 11 cases may exist concurrently with chapter 15 proceedings and that the court must coordinate the relief granted in the different actions. So, for example, if a chapter 7 or chapter 11 case is pending when the chapter 15 petition is filed, the bankruptcy case dominates, the Section 1520 effects of recognition do not apply, and any relief granted under Sections 1519 and 1521 must be consistent with the full bankruptcy case. 11 U.S.C. § 1529(1). If an involuntary petition is filed after a petition for recognition is filed but before recognition has been determined, the Section 362 stay overrides the current Provisional Relief Order, a worldwide estate is created under Section 541(a), including the avoidance actions that are the subject of the draft Complaint, and the relief that has already been granted under Sections 1519 and 1521 (and the stay imposed by Section 1520) must be reviewed and modified or terminated, if necessary, to preserve the rights provided by chapters 7 and 11 of the Bankruptcy Code. Essentially, "[i]n general, the chapter 7 or chapter 11 case is dominant." *Collier Monograph*, ¶ 12[1][a].

---

[7] Pursuant to Sections 303 and 362, upon the filing of an involuntary petition, the automatic stay under Section 362(a) would supersede the Provisional Relief Order.

Only if a bankruptcy petition is filed *after* a recognition order has been entered do the provisions of chapter 15 dominate those of chapters 7 and 11, and then only with respect to the scope of the property under the bankruptcy court's jurisdiction as set forth in Section 1528. Normally, in a bankruptcy case, the court has jurisdiction over all assets in which the debtor has any interest, wherever located. 11 U.S.C. §541(a). Pursuant to Section 1528, however, the effects of a bankruptcy case that is commenced *after* the recognition order is entered "shall be restricted to the assets of the debtor that are within the jurisdiction of the United States . . . and such other assets that are not subject to the jurisdiction and control of a foreign proceeding that has been recognized under this chapter." 11 U.S.C. §1528. This limited exception may have significant ramifications. In the instant cases, if Highland and other creditors are not permitted to file an involuntary case *before* a recognition order is entered, this Court will not have jurisdiction over assets outside of the United States, including possible proceeds subject to recovery as a result of the avoidance actions that are the subject of the draft Complaint.

Case law, too, recognizes that chapter 15 proceedings and full blown bankruptcy cases may proceed, and to protect creditors, sometimes should proceed, simultaneously. In *In re Tradex Swiss AG*, 384 B.R. 34, 44 (Bankr. Mass. 2008), an involuntary chapter 7 petition had been filed by creditors after bankruptcy proceedings in Switzerland had commenced but before the chapter 15 petition was filed. A trustee was already in the process of collecting the debtor's assets and the Swiss proceeding was in limbo pending certain appeals. The court held that "there is no impediment to maintaining a Chapter 7 case in connection with the Chapter 15 one" and ruled that the purposes of chapter 15 were best served by *not* dismissing the pending chapter 7 case and letting the trustee continue administering the debtor's chapter 7 estate. *Id*. at 44.

11

Similarly, in *In re RHTC Liquidating Co.*, 424 B.R. 714 (Bankr. W.D. Pa. 2010), a Canadian Companies Act proceeding was recognized as a foreign main proceeding. When the debtor's assets were sold for less than the outstanding claims, and the Canadian monitor failed to seek to subordinate insider and inter-company claims, creditors filed an involuntary chapter 7 petition in the United States. The Canadian Monitor moved to dismiss the case under Section 305. After considering each of the stated purposes of chapter 15, the court refused to dismiss the involuntary petition, finding that the fairness of the foreign proceedings was questionable, there were concerns over the protection of non-insider creditors and, rather than protecting creditors, dismissal would have the opposite effect. The court stated, "[t]he recognition of a foreign proceeding . . . was never intended to be an automatic bar to additional proceedings being brought in the United States that might, to some extent, conflict with or overlap the foreign proceeding. This should be apparent from the fact that a request for dismissal under Section 305(a)(2) is subject to the discretion of the bankruptcy court." *Id*. at 729.

### 2.     Filing Rights Granted to the Foreign Representative are Limited

It is clear that a plain reading of the statutory provisions contained in the Bankruptcy Code do not restrict, and indeed contemplate that, an entity (including unsecured creditors and/or the debtor, if it has the power to do so under applicable non-U.S. law) can file a voluntary or involuntary petition with respect to a debtor at any time before or after a recognition order is entered. This conclusion becomes inescapable once the provisions that restrict a *foreign representative's* rights to file a chapter 7 or chapter 11 petition are considered. Indeed, where Congress wanted to restrict chapter 7 and chapter 11 filing rights, it did so unambiguously.

After filing a petition, but before an order of recognition is entered, a foreign representative has limited rights as set forth in Sections 1519(a) and 1521. The focus of these rights is to seek,

12

on a provisional basis, a stay with respect to the debtor and/or its assets to the extent necessary to protect the debtor's assets and the interests of creditors. Nothing in Sections 1519 or 1521, however, permits a foreign representative to commence an involuntary or voluntary proceeding after a chapter 15 petition has been filed but before a recognition order has been entered.[8] Rather, under Section 1511(a), recognition is *a prerequisite* to the foreign representative right to file a bankruptcy petition.

Section 1511(a) provides:

(a) Upon recognition, a foreign representative may commence –

(1) an involuntary case under section 303; or

(2) a voluntary case under section 301 or 302, if the foreign proceeding is a main proceeding.

11 U.S.C. § 1511(a). Moreover, Section 1511(b) requires a foreign representative to attach a certified copy of the recognition order to any petition it files for chapter 7 or chapter 11 relief, further highlighting the express intent of the drafters to limit the foreign representative's rights after filing a chapter 15 petition. *See* 11 U.S.C. §1511(b).

The broad grant of rights to creditors (without any limitations as to the timing of the exercise of such rights) and to foreign representatives under Section 1520(c), coupled with the express limitation of those rights when exercised by a foreign representative that has filed a petition for recognition, makes it clear that Congress did not intend to restrict creditors like Highland from exercising their 303(b) rights to file an involuntary petition before recognition of a foreign proceeding. Moreover, there is nothing in the Bankruptcy Code or the legislative history of chapter 15 that remotely suggests that creditors' 303(b) rights are in any way restricted simply because a

---

[8] Currently, the Cayman Orders empower the Provisional Liquidators to seek relief only under chapter 15 of the Bankruptcy Code.

13

petition for recognition has been filed. Rather, the statute and case law recognize and, where appropriate, support the concurrent pendency of involuntary cases and chapter 15 proceedings in order to protect creditors' interests and ensure the fair administration of cross-border insolvencies.

B.     **Permitting Highland and Others to File an Involuntary Petition Against Ocean Rig and/or the Other Debtors Would be in the Best Interests of Creditors**

There are at least two important reasons to permit Highland and others to file an involuntary petition against one or more of the Debtors. The first is to preserve the ability of a trustee (or Highland, other creditors or an official committee, if given standing) to file and prosecute avoidance actions against insiders and others who have received millions of dollars of Ocean Rig's cash as part of a scheme to defraud Ocean Rig's creditors. As Mr. Leontsinis explains in the Collis Crill Affidavit, pursuant to Section 104(4) of the Cayman Companies Law, a liquidator can only carry out the functions conferred upon him/her by the Cayman Court, and his/her powers are limited by the order of appointment. *See* Collis Crill Affidavit ¶ 30. Under the Cayman Orders, the Provisional Liquidators do not have the power to use Cayman Islands law to sue for fraudulent dispositions in the Cayman Islands. *See* Cayman Orders [Dkt. No. 4-1]. Even if the Provisional Liquidators were to become official liquidators (assuming the proposed Schemes of Arrangement failed), the official liquidator could only sue for fraudulent dispositions with the sanction of the Cayman Court.

Furthermore, the Provisional Liquidators cannot sue to avoid the fraudulent conveyances in the Debtors' chapter 15 proceeding, because the draft Complaint and the New York state law avoidance actions described therein are not "assets of the debtor" over which the Provisional Liquidators would have authority and control or this Court would have jurisdiction, but are assets of the Debtors' creditors. *See* 11 U.S.C. §1528. *See Cottone v. Selective Surfaces, Inc.*, 68 A.D.3d 1038, 1040 (N.Y. App. Div. 2009) (Dismissing a New York state law "derivative"

14

fraudulent conveyance claim, the court held that "[h]ere the company is the alleged transferor of assets, not a creditor, and thus a fraudulent conveyance claim may not be maintained on its behalf pursuant to Debtor and Creditor Law §276.")  Nor do the Provisional Liquidators, as foreign representatives, have the same rights to step into the shoes of creditors to assert state law avoidance claims in a chapter 15 proceeding as does a trustee in a chapter 7 or chapter 11 case. *See* 11 U.S.C. §1521(a)(7).  Thus, without an involuntary case, the Provisional Liquidators currently have no recourse to recover the Debtors' fraudulently transferred assets.

Moreover, creditors themselves have no independent recourse in either the Cayman Islands or New York State outside of a chapter 7 or chapter 11 case.  Pursuant to Section 97 of the Cayman Companies Law, when a provisional liquidation order is entered by the Cayman Court, a creditor's right to sue in the Cayman Islands is stayed.[9] *See* Collis Crill Affidavit, ¶ 25. Furthermore, if the Provisional Relief Order is not modified to permit Highland (or others) to file its draft (or a similar) Complaint in New York state court, then creditors' efforts to recover the cash that Ocean Rig fraudulently transferred to insiders will be stymied.  On the other hand, in a bankruptcy case, either a trustee or a debtor-in-possession could commence an avoidance action[10] on behalf of all of the creditors of the Debtors' estates.  11 U.S.C. § 544(a).

The second reason for permitting Highland and others to file an involuntary petition is that if creditors are stayed from exercising their 303(b) filing rights, the Debtors will have a

---

[9] Although a creditor could apply to the Cayman Court for leave to pursue claims against the Debtors, it is highly unlikely that the Cayman Court would grant such leave, because to do so would permit a creditor to recover for its own benefit and not the benefit of all creditors.  *See* Collis Crill Affidavit, n.33.

[10] In addition, Highland and/or an official committee could seek standing to sue for avoidance and recovery on behalf of all creditors. *See STN Enterprises*, 779 F.2d at 904 ("section 1103(c)(5) and 1109(b) imply a qualified right for creditors' committees to initiate suit [to recover fraudulent conveyances] with the approval of the bankruptcy court.").

15

virtually unfettered ability to obtain approval of a scheme that favors insider management by more than $200 million at the expense of third-party creditors (most of whom are U.S. investors) and will be able to avoid many of the important safeguards that U.S. bankruptcy law imposes on debtors, including the requirements under Section 1129 of the Bankruptcy Code that a plan be proposed in good faith, that all impaired, non-consenting creditors receive at least as much under the plan as they would in a hypothetical liquidation and that the plan not discriminate unfairly and be deemed fair and equitable.  11 U.S.C. §§ 1129(a)(3), (7), (8) and (b).  No such requirements are imposed by Cayman Islands law, and the Cayman Court's obligations are primarily to ensure that proper procedures were followed in obtaining creditors' votes.[11]  *See* Collis Crill Affidavit ¶¶ 48, 51 and 52.

      C.      **The Purposes of Chapter 15 Are Best Served in this Case If Highland Is Permitted to File an Involuntary Case Against Ocean Rig If Necessary**

Section 1501 sets forth the purposes of enacting chapter 15, including (i) to protect and maximize the value of the debtor's assets and (ii) to fairly and efficiently administer cross-border insolvencies in a way that protects the interests of all creditors. 11 U.S.C. §§1501(a)(3) and (4).

To the extent the Debtors' assets were fraudulently transferred to insiders or others, as explained in more detail in the draft Complaint, the only way to commence actions to recover these assets and maximize value for *all* creditors is to permit Highland and other creditors to commence an involuntary case, create an estate under Section 541(a) that would include, among other things, the draft Complaint, and trigger the strong-arm powers of a trustee under Section 544 of the Bankruptcy Code for the benefit of *all* creditors.  It is critical to note in this case that

---

[11] As set forth in the Collis Crill Affidavit, the standard the Cayman Court must consider is whether an intelligent and honest man, acting in respect of his interest, might reasonably approve the scheme of arrangement.  This standard is less objective and provides less of a safeguard for creditors' interests than the standards set forth in Section 1129 of the Bankruptcy Code. *See* Collis Crill Affidavit ¶52.4.

16

the RSA contemplates that the Notes will be discharged upon approval of the Debtors' Schemes of Arrangement. If an involuntary case is not commenced prior to the proposed Schemes of Arrangement being sanctioned by the Cayman Court, Highland and other noteholders will no longer be deemed creditors of the Debtors and will lose their standing to sue for fraudulent conveyance in a subsequent chapter 7 or chapter 11 case. *See N.Y. Debt. & Cred. §§ 273, 276* (transfers are fraudulent as to "creditors"). ; *United States v. Watts*, 786 F.3d 152, 162 (2d Cir. 2015) (It is well-settled under New York law that the challenger of a fraudulent conveyance must be a creditor of the transferor; New York law defines a creditor as "'a person having a claim' against the transferor"). The proposed Schemes of Arrangement would effectively release the claims of creditors against the Debtors' insiders for actual fraudulent actions, a sweeping exculpation negotiated by a handful of senior lenders and these same insiders (who, under the Schemes of Arrangement, will receive compensation of over $200 million, including receiving a 10-year management agreement, 9.5% of new equity and continued control of the Debtors' Board of Directors) that violates U.S. public policy and harms, rather than protects, at least two classes of non-consenting creditors. By denying Highland and other creditors' rights to file an involuntary petition, this Court would be indirectly permitting non-consensual, third-party releases that are manifestly contrary to the public policy of the United States. *See In re Vitro S.A.B de C.V.*, 701 F.3d 1031, 1067-69 (5th Cir. 2012), *cert dismissed*, 133 S.Ct. 1862 (2013) (Court refused to enforce Mexican reorganization plan that provided for broad non-consensual, third-party releases, noting that comity has its limits, that under United States law, non-debtor releases "are only appropriate in extraordinary circumstances" which were lacking in the case at bar and that, to rubber stamp provisions of a foreign plan that contradicted United States law would be "disregarding the considerations and safeguards Congress included in § 1507(b)"); *see*

17

*also In re Metromedia Fiber Networks, Inc.*, 416 F.3d 136, 141-43 (2d Cir. 2005) (non-consensual, third-party releases should not be approved "absent the finding that truly unusual circumstances render the release terms important to success of the plan.")

There are several other significant protections that are provided to creditors under chapter 7 and chapter 11 of the Bankruptcy Code that are not available to creditors under a scheme of arrangement or provisional liquidation proceeding in the Cayman Island. For example, in the Cayman Island, parties-in-interest do not have discovery rights to develop facts to support objections to proposed schemes of arrangement. Likewise, parties-in-interest are very rarely permitted to cross-examine witnesses who file affidavits in support of such schemes, again in order to objectively determine whether the scheme is in the parties' best interests. *See* Collis Crill Affidavit ¶¶ 40 and 42. In U.S. bankruptcy cases, creditors have the benefit of sworn schedules, statements of financial affairs and affidavits and the right to take discovery in connection with reorganization plans, to examine witnesses and to request that the Court order a Bankruptcy Rule 2004 examination where appropriate. These discovery rights are crucial in situations, such as this case, where certain creditors (such as certain senior lenders) have had superior access to information about the Debtors and other creditors (like Highland) have been denied such access.[12]

In addition, under the Cayman Orders, the Cayman Court dispensed with the need to form a liquidation committee, so there is no body similar to an official creditors' committee to represent the interest of unsecured creditors. Furthermore, the Cayman Islands liquidation

---

[12] Highland has been advised that the Debtors created a data room in 2016 and that certain senior lenders have had access to the data room connection with the negotiation of the RSA. Despite requests made by Highland's counsel for equal access, Highland has not been permitted to review the documents or other information contained in the data room, thus perpetuating the discriminatory treatment that has plagued the Debtors' dealing with Highland and other creditors *See Preliminary Objection of the Ad Hoc Group of Holders of the 6.5% DRH Secured Notes* [Dkt No. 26] ¶¶ 25 - 35.

18

proceedings do not have an independent, government employee like the United States Trustee to oversee the Debtors' actions and protect the interests of unsecured creditors. Clearly, the goal of protecting creditors would be better served by the concurrent pendency of a full bankruptcy case, especially when chapter 15 expressly permits and preserves the rights of creditors to file involuntary petitions under Section 303 of the Bankruptcy Code even before recognition.

The interests of the public policy of the United States under these circumstances favors the filing of an involuntary case against Ocean Rig to recover and preserve assets, protect all creditors' and shareholders' interests, maximize value and facilitate the rescue of the failing Debtors.

## CONCLUSION

For the foregoing reasons, Highland respectfully requests that the Court modify the Provisional Relief Order to permit Highland and others to file an involuntary petition for relief against the Debtors (or any one of them).

Dated: New York, New York
April 14, 2017

Respectfully submitted,

VENABLE LLP

By:  /s/ Jeffrey S. Sabin
Jeffrey S. Sabin
Kostas D. Katsiris
Rockefeller Center
1270 Avenue of the Americas, 24th Floor
New York, New York 10020
Telephone: (212) 307-5500

*Counsel for Highland Capital Management*

19