VENABLE LLP
Rockefeller Center
1270 Avenue of the Americas, 24th Floor
New York, New York 10020
Telephone: (212) 307-5500
Jeffrey S. Sabin
Kostas D. Katsiris
*Counsel for Highland Capital Management LP*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------- x
                                                         :
In re                                                    :    Chapter 15
                                                         :
OCEAN RIG UDW, INC., et al.                              :    Case No. 17- 10736 (MG)
                                                         :
          Debtors in a Foreign Proceeding.               :    Jointly Administered
                                                         :
------------------------------------------------------- x


# HIGHLAND'S MEMORANDUM OF LAW IN SUPPORT OF MOTION IN THE ALTERNATIVE FOR LEAVE TO APPEAL

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ................................................................................. 1

FACTUAL AND PROCEDURAL BACKGROUND ............................................... 6

    1.    Debtors' Management's Pre-Bankruptcy Machinations......................... 6

    2.    The Cayman Proceedings .................................................................... 6

    3.    The Chapter 15 Proceedings and TRO ............................................... 7

    4.    Highland's Limited Objection Seeking Leave to File Involuntary Petitions
        against the Debtors............................................................................... 8

    5.    The Bankruptcy Court's Granting of Provisional Relief, but Postponement of
        Decision on whether it is Authorized to Restrain Creditors From Filing
        Involuntary Petitions against Debtors Pre-Recognition........................... 8

    6.    The Bankruptcy Court's Ruling that it is Authorized to Restrain Creditors
        from Filing Involuntary Petitions against Debtors Pre-Recognition ..... 9

STATEMENT OF QUESTION TO BE PRESENTED ON APPEAL......................... 10

STATEMENT OF RELIEF SOUGHT................................................................... 11

STATEMENT OF REASONS WHY LEAVE TO APPEAL SHOULD BE GRANTED........... 11

I.    THE APRIL 27 ORDER IS FINAL AND APPEALABLE AS OF RIGHT.................... 12

    1.    Orders Denying Stay Relief, or Determining that Certain Actions are
        Covered by the Stay, are Generally Final, Appealable Orders ............................ 13

    2.    The Possibility of Bringing a New Motion for Relief at an Indeterminate
        Point in the Future Does Not Transform an Otherwise Final Order into an
        Interlocutory Order ................................................................................... 14

II.    ALTERNATIVELY, IF THE COURT DETERMINES THAT THE APRIL 27
    ORDER IS NOT FINAL, THE ORDER IS NEVERTHELESS APPEALABLE
    UNDER THE COLLATERAL ORDER DOCTRINE ........................................................ 16

III.    IF THE COURT DETERMINES THAT THE APRIL 27 ORDER IS NOT FINAL,
    THE COURT SHOULD ALSO GRANT LEAVE TO APPEAL UNDER 28 U.S.C. §
    158(a)(3) ......................................................................................................... 18

    1.    The April 27 Order Concerns a Controlling Question of Law ............................ 19

    2.    The April 27 Order Presents a Substantial Ground for Difference of Opinion,
        as it Concerns a Difficult Question of First Impression ....................................... 22

i

3.    An Immediate Appeal Would Materially Advance the Litigation's Ultimate
      Termination.............................................................................................................. 24

CONCLUSION......................................................................................................................... 25

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*In re 2927 Eighth Ave. Corp.*,
    No. 01 CIV. 8947 (BSJ), 2004 WL 1403362 (S.D.N.Y. June 23, 2004)....................12, 16, 17

*In re AroChem Corp.*,
    176 F.3d 610 (2d Cir. 1999)................................................................................11

*In re CGE Shattuck, LLC*,
    255 B.R. 334 (B.A.P. 1st Cir. 2000) ...................................................................15

*In re Chateaugay Corp.*,
    880 F.2d 1509 (2d Cir. 1989)................................................................13, 14, 15

*In re Enron Corp.*,
    No. 01-16034, 2006 WL 2548592 (S.D.N.Y. Sept. 5, 2006) ...............19, 20, 22, 24

*In re Enron Creditors Recovery Corp.*,
    No. 01-16034 (AJG), 2009 WL 3349471 (S.D.N.Y. Oct. 16, 2009).......................3, 19, 20, 22

*In re Fairfield Sentry Ltd.*,
    No. 10 Civ. 7311(GBD), 2011 WL 4357421 (S.D.N.Y. Sept. 16, 2011)...............11

*In re Johns-Manville Corp.*,
    824 F.2d 176 (2d Cir. 1987)..............................................................................12, 16

*In re Lehman Brothers*,
    697 F.3d 74 (2d Cir. 2012)................................................................................12

*In re Maynard*,
    290 B.R. 67 (D. Vt. 2002)................................................................................17

*In re Ocana*,
    151 B.R. 670 (S.D.N.Y. 1993)...........................................................................13

*In re Pan Am Corp.*,
    16 F.3d 513 (2d Cir. 1994).............................................................................16, 18

*In re Pro-Fit Holdings Ltd.*,
    391 B.R. 850 (Bankr. C.D. Cal. 2008).............................................................23

*In re Quigley Co., Inc.*,
    676 F.3d 45 (2d Cir. 2012)................................................................................13

*In re Quigley Co., Inc.*,
   No. M-47 (RJH), 2010 WL 356653 (S.D.N.Y. Jan. 27, 2010)...........................................12, 15

*In re Ran*,
   607 F.3d 1017 (5th Cir. 2010) ...............................................................................................23

*In re Vitro, S.A.B. de C.V.*,
   455 B.R. 571 (Bankr. N.D. Tex. 2011)...................................................................................23

*Urban Retail Properties v. Loews Cineplex Entm't Corp.*,
   No. 01 CIV.8946 (RWS), 2002 WL 535479 (S.D.N.Y. Apr. 9, 2002) ...............12, 15, 16, 19

*Matter of W. Elecs. Inc.*,
   852 F.2d 79 (3d Cir. 1988).......................................................................................................15

**Statutes**

11 U.S.C. § 303(b) ...................................................................................................................1, 23

11 U.S.C. § 356(d)(3) ...................................................................................................................16

11 U.S.C. § 362 ...............................................................................................................................7

11 U.S.C. § 541(a) ........................................................................................................................20

11 U.S.C. § 544..........................................................................................................................3, 17

11 U.S.C. §§ 1129(a)(3), (7), (8) and (b) ....................................................................................21

11 U.S.C. § 1519(a) .........................................................................................................1, 10, 22, 24

11 U.S.C. § 1520 (c) ..........................................................................................................1, 23, 24

11 U.S.C. § 1528..........................................................................................................................3, 20

28 U.S.C. § 158(a) ........................................................................................................................11

28 U.S.C. § 158(a)(1)...........................................................................................................5, 11, 15

28 U.S.C. § 158(a)(3)............................................................................................................. *passim*

28 U.S.C. § 1292(b) ..................................................................................................................5, 19

Bankruptcy Code chapter 11.................................................................................................*Passim*

Bankruptcy Code chapter 15...............................................................................................*passim*

**Other Authorities**

Fed. R. Bankr. P. 8003 ................................................................................................1, 11

Fed. R. Bankr. P. 8004 ....................................................................................................11

H.R. Rep. No. 109-31(I), (2005) ....................................................................................23

Highland Capital Management LP, on behalf of certain of its or its affiliates' funds and managed accounts (collectively, "<u>Highland</u>" or "<u>Appellant</u>")[1], by and through undersigned counsel, respectfully submits this memorandum of law in support of its motion (the "<u>Motion</u>"), in the alternative, for leave to appeal, pursuant to 28 U.S.C. § 158(a)(3) and Federal Rule of Bankruptcy Procedure 8003, from the order (the "<u>April 27 Order</u>") of the United States Bankruptcy Court for the Southern District of New York (the "<u>Bankruptcy Court</u>") made and so-ordered on the record during the April 20, 2017 hearing, and entered on the docket of the above-captioned Chapter 15 proceeding on April 27, 2017 [Dkt. No. 55], denying that portion of Highland's Limited Objection (the "<u>Objection</u>") [Dkt. Nos. 25 & 46] requesting that the Bankruptcy Court modify the Provisional Relief Order [Dkt. No. 41] to permit Highland and other creditors to file an involuntary petition for relief against the Debtors (as hereinafter defined). A true and correct copy of the so-ordered transcript reflecting the April 27 Order is attached as Exhibit A to Appellant's Notice of Appeal and Motion for Leave to Appeal.

## PRELIMINARY STATEMENT

This appeal concerns an issue of first impression in chapter 15 cross-border insolvency proceedings—whether the Bankruptcy Court has the power and authority under section 1519(a) of the United States Bankruptcy Code, 11 U.S.C § 101 et seq. (the "<u>Bankruptcy Code</u>"), to restrain Highland and other creditors from exercising their title 11 statutory rights to file involuntary bankruptcy petitions against the Debtors before a chapter 15 recognition order is entered. Nothing in the Bankruptcy Code restricts creditors' rights under section 303(b) to file an involuntary petition against a chapter 15 debtor, and nothing in section 1519 of the Bankruptcy Code empowers the Bankruptcy Court to deny creditors their section 303(b)

---

[1] The Highland funds and managed accounts that comprise Appellant are Highland Floating Rate Opportunities Fund, Highland Global Allocation Fund, Highland Opportunistic Credit Fund, Highland Loan Master Fund, L.P., and NexPoint Credit Strategies Fund.

statutory rights prior to entry of a recognition order. Moreover, other sections of the Bankruptcy Code, including sections 1520(c) and 1529, as well as the legislative history of chapter 15, expressly contemplate that chapter 15 cases and involuntary bankruptcy cases may proceed concurrently. In entering the April 27 Order denying Highland's Objection, the Bankruptcy Court simply exceeded the power granted to it under the Bankruptcy Code and ordered relief that will trigger a series of consequences that will adversely affect, if not entirely eliminate, other statutory rights granted to Highland and similarly situated creditors.

In March 2017, Ocean Rig UDW, Inc. ("Ocean Rig" and, together with its affiliated debtors, collectively the "Debtors") filed winding-up petitions (the "Cayman Proceedings") in the Cayman Islands and, thereafter, the Debtors' court-appointed provisional liquidators (the "Provisional Liquidators") filed chapter 15 petitions (the "Chapter 15 Proceedings") seeking recognition of the Cayman Proceedings as foreign main proceedings. Prior to the Cayman Proceedings, the Debtors negotiated a Restructuring Support Agreement (the "RSA") with certain senior lenders that is intended to form the basis of the Debtors' Schemes of Arrangement in the Cayman Islands. The Schemes of Arrangement may be sanctioned by the Cayman Islands court as early as July 2017. The hearing to consider recognition of the Cayman Proceedings as a chapter 15 foreign main proceeding by the Bankruptcy Court is currently scheduled for July 13, 2017. The timing of when Highland and others are permitted to file involuntary bankruptcy petitions is crucial in this case.

From the beginning of these proceedings, Highland has made clear that it believes (and has drafted a complaint alleging in great detail)[2] that the Debtors have fraudulently conveyed millions of dollars of cash to foreign insiders that can, and should, be recovered under applicable

---

[2] Highland believes that the Debtors have committed multiple fraudulent conveyances over a 2-year period designed to benefit insiders and defraud creditors. To that end, Highland drafted a complaint (the "Draft Complaint") and attached it as Exhibit A to its Limited Objection (as hereinafter defined).

New York Debtor and Creditor Law. To do so, however, as a matter of law, Highland and other noteholders must be, at the relevant time, *creditors* of the Debtors and, as a matter of practicality and enforcement, the Bankruptcy Court must have worldwide jurisdiction to collect from the recipients and/or defendants of the fraudulent transfers. This is not a problem if Highland and other creditors are permitted to exercise their statutory rights to file involuntary petitions against the Debtors before recognition. As Highland and other noteholders were, at the relevant time, and are currently creditors of the Debtors with standing to prosecute the Draft Complaint under New York Debtor and Creditor Law, the Draft Complaint would become property of the estate upon filing of the involuntary petitions, and a bankruptcy trustee would have the right to assume such creditors' standing under section 544 of the Bankruptcy Code to prosecute the Draft Complaint in order to enhance the estate for the benefit of all creditors. Moreover, in bankruptcy cases initiated *prior* to chapter 15 recognition, the Bankruptcy Code creates a worldwide estate. If, however, Highland and other creditors are forced to wait until after recognition (as the April 27 Order currently provides), their rights will be effectively eliminated.

Under section 1528 of the Bankruptcy Code, the timing of *when* creditors file involuntary bankruptcy petitions against a foreign debtor has at least two important ramifications. First, filing an involuntary petition before a recognition order is entered triggers a worldwide stay of actions with respect to the Debtors' assets and compels the Debtors to coordinate their foreign proceedings with the U.S. involuntary bankruptcy cases, whereas filing an involuntary petition after a recognition order is entered limits the stay (and coordination efforts) to only those assets found in the United States. Second, and equally as important, a pre-recognition involuntary filing creates a worldwide estate over which the Bankruptcy Court has broad jurisdiction, whereas a post-recognition involuntary filing limits the property over which the Bankruptcy

Court has jurisdiction to only those assets located in the United States. In this case, the difference between these two scenarios is dramatic.

The RSA contemplates a scheme that treats Highland's and other 7.5% noteholders' claims as *discharged* in exchange for the distribution of a tiny amount of new equity. If the Schemes of Arrangement, therefore, are sanctioned, Highland and other noteholders will no longer be deemed creditors of the Debtors. Under New York Debtor and Creditor Law, only creditors have standing to maintain fraudulent conveyance suits. Thus, if the April 27 Order continues to restrict Highland and other creditors from exercising their statutory filing rights until after a recognition order is entered, and most likely, after the Schemes of Arrangement are sanctioned, it will defeat the purpose of such a filing, because the 7.5% noteholders' standing (or a trustee's derivative standing) to bring the Draft Complaint will be destroyed. In addition, if the April 27 Order continues to stay involuntary filings until after foreign proceeding recognition is determined, the Bankruptcy Court's jurisdiction will be limited only to assets that creditors can recover in the United States, effectively rendering any fraudulent conveyance award against assets transferred to the Debtors' foreign insiders meaningless. The Bankruptcy Court could *adjudicate* the fraudulent transfer claims under New York law, because such claims would be assets located in the United States, but the property that was fraudulently transferred is located outside of the United States, and in a post-recognition case, the Bankruptcy Court would have no jurisdiction in other countries to recover such property.

This Court has jurisdiction over this appeal, because orders denying exercise of a statutory right or denying stay relief are generally deemed final. The Bankruptcy Court's April 27 Order deciding that creditors are restrained pre-recognition from filing involuntary petitions

against the Debtors is therefore a final order that is appealable as of right under 28 U.S.C. §
158(a)(1).

Alternatively, should this Court determine that the April 27 Order is not final, it should
grant Highland leave to appeal under the collateral order doctrine, as the Bankruptcy Court
conclusively resolved an important disputed question that is completely separable from, and
collateral to, the merits of the Debtors' Chapter 15 Proceedings, and would be effectively
unreviewable on appeal after entry of an order of recognition or confirmation of the Debtors'
Schemes of Arrangement. In particular: (1) the Bankruptcy Court conclusively decided that it
was authorized to restrain creditors from filing involuntary petitions against the Debtors pre-
recognition; (2) this issue is completely separable from, and collateral to the merits of whether
the Bankruptcy Court should ultimately recognize the Cayman Proceedings as foreign main
proceedings or foreign non-main proceedings; and (3) the April 27 Order will be effectively
unreviewable on appeal, because if a recognition order is entered and the Schemes of
Arrangement are sanctioned prior to the final adjudication of Highland's appeal, Highland and
other noteholders' rights to prosecute the Draft Complaint and recover millions of dollars of
fraudulent transfers for the benefit of all creditors will be irretrievably lost.

Should this Court determine that the April 27 Order is not final, it should also grant
Highland leave to appeal the April 27 Order pursuant to 28 U.S.C. § 158(a)(3), as this case
satisfies 28 U.S.C. § 1292(b)'s requirements for granting leave to appeal interlocutory orders. In
particular, the April 27 Order: (1) concerns a pure and controlling question of law, namely
whether the Bankruptcy Court is authorized to restrain creditors from filing an involuntary
petition against debtors pre-recognition; (2) there is substantial grounds for difference of opinion,
as the issue at hand is one of first impression, and the Bankruptcy Court conceded that it is a

difficult issue; and (3) an immediate appeal would materially advance the litigation by allowing the involuntary case to proceed concurrently with, rather than sequentially to, the existing Chapter 15 Proceedings, thereby compelling coordination of litigation efforts and resolution of the parties' reorganization issues.

For these reasons, among others, the Court should hold that the Bankruptcy Court's April 27 Order is final and appealable as of right, or, alternatively, is an appealable interlocutory order.

## FACTUAL AND PROCEDURAL BACKGROUND

### 1.    Debtors' Management's Pre-Bankruptcy Machinations

Ocean Rig is a holding company that, through its subsidiaries, provides drilling services for offshore oil and gas exploration, development and production.  Ocean Rig is the direct parent of Debtors, Drillships Finance Holding, Inc. ("DFH"), Drill Rigs Holdings Inc. ("DRH"), and Drillships Ocean Ventures Inc. ("DOV").

As more thoroughly detailed in the Draft Complaint, Highland and other holders of Ocean Rig's 7.5% Senior Notes due 2019 (the "Notes") have been the victims of a two-year fraudulent scheme perpetrated by Ocean Rig's controlling director and CEO, George Economou ("Economou").  Acting through a network of related entities that he dominates and controls, Economou has, among other things, siphoned cash from Ocean Rig to other entities he controls in order to enrich himself at the expense of, and  with actual intent to hinder, delay and defraud, Ocean Rig's creditors.

### 2.    The Cayman Proceedings

On March 24, 2017, unbeknownst to Highland and before it could file its Draft Complaint, the Debtors filed winding up petitions under Part V of the Cayman Island Companies Law (2016 Revision) in the Grand Court of the Cayman Islands (the "Cayman Court"), thereby initiating the Cayman Proceedings.

Based on the information available in the Debtors' RSA, it appears that the Schemes of Arrangement to be proposed in the Cayman Proceedings will provide that, among other things, (i) the Notes will be discharged in exchange for 0.7% of new equity, valued at significantly less than the full amount of their claims, and (ii) Economou and his management team will receive compensation of over $200 million, including a 10-year management agreement, 9.5% of new equity, and continued control of the Debtors' Board of Directors. The self-serving provisions of the Schemes of Arrangement are particularly egregious given that Economou's and other management insiders' deliberate depletion of the Debtors' liquidity is one of the primary reasons that the Debtors were forced to file winding-up petitions and commence the Cayman Proceedings.

### 3.    The Chapter 15 Proceedings and TRO

On March 27, 2017, the Grand Cayman Court appointed Simon Appell and Eleanor Fischer to be the Provisional Liquidators in the Cayman Proceedings. On the same day, the Provisional Liquidators, on behalf of the Debtors, commenced the above-captioned Chapter 15 Proceedings by filing a petition for recognition for each Debtor [Dkt. No. 1] (the "Forms of Petition") together with the *Verified Petition of Ocean Rig UDW Inc., et al. (in Provisional Liquidations) and Motion of the Joint Provisional Liquidators for (A) Recognition of the Cayman Proceedings as Foreign Main Proceedings or, in the Alternative, as Foreign Non-main Proceedings and (B) Certain Related Relief* [Dkt. No. 2] (the "Verified Petition", together with the Forms of Petition, the "Petitions for Recognition") in the Bankruptcy Court.

Concurrently therewith, the Provisional Liquidators filed a motion (the "TRO Motion"), seeking, on an emergency, *ex parte* basis, a temporary restraining order (the "TRO") staying all holders of Scheme Indebtedness from taking any and all action with respect to the Debtors and their property within the territorial jurisdiction of the United States to the full extent of section

362 of the Bankruptcy Code. *See Motion for Ex Parte relief and (II) Provisional Relief Pursuant to 11 U.S.C. §§ 1519, 1521(a)(7), and 362* [Dkt. No. 8]. The TRO Motion also sought an order granting provisional relief, which would continue the relief sought in the TRO pending chapter 15 recognition of the Cayman Proceedings by the Bankruptcy Court.

The Bankruptcy Court entered the TRO on an *ex parte* basis on the Petition Date and scheduled a hearing for April 3, 2017 to consider the Provisional Liquidators' request for entry of a provisional relief order [Dkt. No 12].

> **4.    Highland's Limited Objection Seeking
> Leave to File Involuntary Petitions against the Debtors**

Highland filed a timely objection to the TRO Motion on March 31, 2017. *See Limited Objection of Highland Capital Management LP to the Motion for (I) Ex Parte Emergency Relief and (II) Provisional Relief Pursuant to 11 U.S.C. §§ 1519, 1521(a)(7), and 362* (the "Limited Objection") [Dkt. No. 25]. In its Limited Objection, Highland sought, among other relief, clarification from the Bankruptcy Court that the TRO did not, and that the contemplated provisional relief order would not, prohibit, stay or otherwise restrain creditors from filing an involuntary petition for relief against one or all of the Debtors under chapter 7 or chapter 11 of the Bankruptcy Code. Highland argued that the Bankruptcy Court lacked the power and authority under chapter 15 of the Bankruptcy Code to restrain creditors from filing such involuntary petitions.

> **5.    The Bankruptcy Court's Granting of Provisional Relief,
> but Postponement of Decision on whether it is Authorized
> to Restrain Creditors From Filing Involuntary Petitions against
> Debtors Pre-Recognition**

During the Bankruptcy Court's April 3, 2017 hearing (the "April 3 Hearing") regarding Highland's and another group of creditors' objections, the Bankruptcy Court extended "the temporary restraining [order] as provisional relief until the Court rules on recognition . . . [but]

agreed to have briefing and hearing on the issue of [creditors'] ability to file involuntary proceedings" against the Debtors.    April 3 Hr'g Tr. 47:10-48:2.    On April 7, 2017 the Bankruptcy Court entered the Order Granting Provisional Relief (the "Provisional Relief Order") [Dkt. No. 41], in which it explicitly stated that the Provisional Relief Order was entered "without prejudice to the Court's continuing consideration and adjudication of the relief requests in the [Limited Objection] concerning whether . . . creditors may file an involuntary petition for relief against one or all of the Debtors under chapter 7 or 11 of the Bankruptcy Code." Provisional Relief Order ¶ 3.

> **6.    The Bankruptcy Court's Ruling that it is Authorized to Restrain Creditors from Filing Involuntary Petitions against Debtors Pre-Recognition**

Following the April 3 Hearing, Highland, the Provisional Liquidators , and the Ad Hoc Group of Lenders under the DFH and DOV Credit Agreements (the "Ad Hoc Group"), filed supplemental briefs [Dkt. Nos. 46-48] with the Bankruptcy Court addressing the Bankruptcy Court's power, or lack thereof, to restrain creditors from filing involuntary petitions against debtors pre-recognition.

In the *Memorandum of Law in Further Support of Limited Objection of Highland Capital Management LP to the Motion for (I) Ex Parte Emergency Relief and (II) Provisional Relief Pursuant to 11 U.S.C. §§ 1519, 1521(a)(7), and 362* (the "Supplemental Brief") [Dkt. No. 46], Highland reiterated its statutory argument that the Bankruptcy Court lacked the power to restrain creditors from filing an involuntary petition against a debtor pre-recognition, and stressed that, without an involuntary bankruptcy proceeding, creditors would be unable to file the Draft Complaint and would be left without recourse to recover the Debtors' fraudulently transferred assets.

The Bankruptcy Court held a hearing on April 20, 2017 (the "April 20 Hearing") to determine whether the Bankruptcy Court was empowered to restrain creditors from filing involuntary petitions against the Debtors pre-recognition. *See* April 20 Hr'g Tr. 6:1-5; 38:19-39:12. After recognizing that the narrow question before the Bankruptcy Court may be one of first impression, *id.* at 43:22-44:2, and after noting that the question under consideration was not "an easy issue," *id.* at 6:17-22, the Bankruptcy Court nevertheless ruled from the bench that it "had the authority to enter the [Provisional Relief Order]" restraining creditors from filing involuntary petitions against the Debtors, and that such order would therefore remain in effect. *Id.* at 46:15-47:3.

At the close of the April 20 Hearing, Highland's counsel sought to clarify whether Highland could appeal directly from the Bankruptcy Court's ruling on the record, and the Bankruptcy Court responded that it was "so-ordering the transcript." *Id.* at 50:14-20. The transcript of the April 20 Hearing reflecting the Bankruptcy Court's ruling was entered on the Bankruptcy Court's docket on April 27, 2017 [Dkt. No. 55], and this appeal is taken therefrom.

## STATEMENT OF QUESTION TO BE PRESENTED ON APPEAL

Whether the Bankruptcy Court erred in holding that it had the authority under 11 U.S.C. § 1519(a) to restrain creditors from filing involuntary petitions against the Debtors during the period after a chapter 15 petition is filed but before a recognition order is entered, despite a lack of statutory authority or precedent authorizing such a restraint, and the presence of various specific Bankruptcy Code provisions and legislative history contemplating that chapter 15 cases and involuntary bankruptcy cases may proceed concurrently.

## STATEMENT OF RELIEF SOUGHT

This Court, upon finding that the April 27 Order is final and appealable as of right under 28 U.S.C. § 158(a)(1), or in the alternative, upon granting Highland's Motion for leave to file this appeal under 28 U.S.C. § 158(a)(3), should hold that the Bankruptcy Court lacks the authority to restrain creditors from exercising their federal statutory right to file involuntary petitions against the Debtors pre-recognition, and should therefore reverse the Bankruptcy Court's April 27 Order and remand this matter with instructions that the Bankruptcy Court revise the Provisional Relief Order to permit creditors to immediately file involuntary petitions against the Debtors.

## STATEMENT OF REASONS WHY LEAVE TO APPEAL SHOULD BE GRANTED

Appeals of bankruptcy court orders are governed by 28 U.S.C. § 158(a). *See In re AroChem Corp.*, 176 F.3d 610, 618 (2d Cir. 1999). Final orders of the bankruptcy court may be appealed to the district court as of right under 28 U.S.C. § 158(a)(1) and Fed. R. Bankr. P. 8003. Appeals from interlocutory bankruptcy court orders, however, are governed by 28 U.S.C. § 158(a)(3) and Fed. R. Bankr. P. 8004, and may be taken only with leave of the district court. *See In re AroChem Corp.*, 176 F.3d at 618. Section 158(a) applies to bankruptcy court orders in proceedings under Chapter 15 of the Bankruptcy Code. *See, e.g., In re Fairfield Sentry Ltd.*, No. 10 Civ. 7311(GBD), 2011 WL 4357421 *3 (S.D.N.Y. Sept. 16, 2011).

For the reasons that follow, the April 27 Order is a final order, appealable as of right under section 158(a)(1). Even if the Court determines that the April 27 Order is interlocutory, however, the Court should grant Highland leave to appeal under the collateral order doctrine as the April 27 Order (1) conclusively determines a disputed question, (2) resolves an important issue completely separable from the merits of the action, and (3) would be effectively

unreviewable on appeal from a final judgment. *See In re 2927 Eighth Ave. Corp.*, No. 01 CIV. 8947 (BSJ), 2004 WL 1403362, at *5 (S.D.N.Y. June 23, 2004) (quoting *In re Johns-Manville Corp.*, 824 F.2d 176, 180 (2d Cir.1987)). The Court should also grant Highland leave to appeal the April 27 Order pursuant to 28 U.S.C. § 158(a)(3), as the April 27 Order (1) involves a controlling question of law (2) as to which there is a substantial ground for difference of opinion and (3) an immediate appeal would materially advance the ultimate termination of the litigation. *See Urban Retail Properties v. Loews Cineplex Entm't Corp.*, No. 01 CIV.8946 (RWS), 2002 WL 535479, at *4 (S.D.N.Y. Apr. 9, 2002).

## I.     THE APRIL 27 ORDER IS FINAL AND APPEALABLE AS OF RIGHT

The April 27 Order is final and appealable as of right, under the flexible standard of finality that applies in bankruptcy cases. Specifically, "the Second Circuit has adopted a flexible approach to the concept of 'finality' in the bankruptcy context. . . . [R]ather than focusing on the form of an order, the Court's focus should be on its effect and whether, as a practical matter, it finally resolves a discrete dispute." *In re Quigley Co., Inc.*, No. M-47 (RJH), 2010 WL 356653, at *3-4 (S.D.N.Y. Jan. 27, 2010). "[F]inality is viewed functionally, focusing on pragmatic considerations rather than on technicalities. A finality determination in a bankruptcy appeal involves consideration of such factors as the impact of the matter on the assets of the bankruptcy estate, the preclusive effect of a decision on the merits, and whether the interests of judicial economy will be furthered." *In re Lehman Brothers*, 697 F.3d 74, 77 (2d Cir. 2012) (internal citations and quotation marks omitted).

Here, the Court should find that the April 27 Order is final because: (1) orders staying exercise of a statutory right, denying stay relief, or determining whether certain actions are covered by the stay, are generally final; and (2) the possibility of bringing a new motion for relief at an indeterminate point in the future does not transform an otherwise final order into an

interlocutory order.

     **1.**     **Orders Denying Stay Relief, or Determining that Certain Actions are
Covered by the Stay, are Generally Final, Appealable Orders**

Courts have generally treated bankruptcy orders that deny stay relief as final, appealable

orders. *See In re Chateaugay Corp.*, 880 F.2d 1509, 1511 (2d Cir. 1989) (holding that order

denying stay relief was final, and noting that "most circuits that have considered the issue have

held that such orders are final"); *see also In re Ocana*, 151 B.R. 670, 671 (S.D.N.Y. 1993)

("Courts have treated bankruptcy orders staying other actions as appealable").  Similarly, courts

treat bankruptcy orders determining whether a stay applies to a particular action as final

appealable orders.  *See In re Quigley Co., Inc.*, 676 F.3d 45, 51 (2d Cir. 2012) ("whether a

bankruptcy court order involves an appeal from a denial of a motion to lift the automatic stay[,]

or involves an appeal from an order holding that the automatic stay applies to the action is not a

distinction of consequence to the finality issue." (internal quotation marks, brackets, and ellipses

omitted)).

Here, Highland challenged the Bankruptcy Court's authority to issue an order that

purported to restrain creditors from exercising a federal statutory right to file involuntary

bankruptcy petitions against the Debtors pre-chapter 15 recognition.  After deferring decision on

the issue during the April 3 Hearing and inviting supplemental briefing on the subject, the

Bankruptcy Court ultimately held during the April 20 Hearing that the Provisional Relief Order

applied to, and restrained creditors from, filing involuntary petitions against the Debtors, and that

the Bankruptcy Court had the authority to issue such an order.  *See* April 20 Hr'g Tr. 39:6-12,

46:22-47:3.  The Bankruptcy Court's determination is thus final and appealable.  *See In re

Quigley Co., Inc.*, 676 F.3d at 51.

Furthermore, the April 27 Order has a significant impact on assets of the Debtors' bankruptcy estate, as the filing of an involuntary petition post-recognition severely limits the scope of the involuntary cases' stay and estate from worldwide reach to domestic reach only. The preclusive effect of the April 27 Order is also considerable, because restricting Highland and other noteholders' exercise of their statutory rights to file an involuntary petition until after recognition, and possibly after the Schemes of Arrangement are sanctioned, will (i) adversely affect their ability to enforce any judgment they may obtain in connection with the Draft Complaint and (ii) eliminate their standing as creditors and their rights to prosecute the Draft Complaint at all.

The possibility that an appeal may become moot is another factor considered by courts in determining whether an order is final. *See Chateaugay Corp.*, 880 F.2d at 1513. ("The possibility of mootness further supports appellants' argument that the denial should be immediately appealable.") In this case, where the April 27 Order denies Highland and other creditors the right to file an involuntary petition until after recognition, and possibly after the Schemes of Arrangement become effective, any appeal of the April 27 Order after recognition may become moot, as Highland and other creditors' rights to prosecute the Draft Complaint and recover millions of dollars of fraudulently conveyed property may be eliminated. This further supports a finding that the Bankruptcy Court's April 27 Order is final and appealable.

### 2. The Possibility of Bringing a New Motion for Relief at an Indeterminate Point in the Future Does Not Transform an Otherwise Final Order into an Interlocutory Order

Though the Bankruptcy Court alluded to the possibility that its ruling declining "to modify or lift the stay" would not be "forever," April 20 Hr'g Tr. 50:10-13, "an otherwise final order denying relief from a stay [is] not . . . interlocutory simply because the movant remained free to make a new motion for relief from the stay at a future date if their circumstances

14

suggested that relief from the stay would be appropriate." *In re Quigley Co., Inc.*, 2010 WL 356653, at *5 (citing *In re Chateaugay Corp.*, 880 F.2d at 1513); *see also Urban Retail Properties*, 2002 WL 535479, at *3 (holding that bankruptcy court's order was final, and noting that "[a]lthough the [underlying] motion was denied without prejudice, the Debtors are incorrect in asserting that Urban retained the right to reargue the issue at a later date (i.e., in the event that the Debtors later reject the Lease). Judge Gropper was unequivocal in denying Urban's motion for immediate payment as a matter of law"). Bankruptcy court determinations are "predicated on the circumstances then before the court. If those circumstances should change, those changed circumstances provide a new independent ground for relief from the stay, not a continuation of the earlier dispute." *In re CGE Shattuck, LLC*, 255 B.R. 334, 336 (B.A.P. 1st Cir. 2000); *see also In re Quigley Co., Inc.*, 2010 WL 356653, at *5 (a bankruptcy court's potential reconsideration of the question of stay relief at a later date does not render its order denying stay relief non-final because such reconsideration "should be viewed as consideration of a new motion, which would be decided in light of different circumstances and with potentially different consequences for the parties").

Furthermore, where, as here, a bankruptcy court conclusively rules on a discrete legal issue as a matter of law, rather than on the basis of facts, the ruling should be deemed a final order, appealable as of right under 28 U.S.C. § 158(a)(1). *Matter of W. Elecs. Inc.*, 852 F.2d 79, 82 (3d Cir. 1988) (holding that the bankruptcy court order at issue was a final, appealable order where the "consequence of the bankruptcy court's decision was to reject [the creditor's] legal position," and where "the passage of time would not have made [such position] more tenable").

In *Urban Retail Properties v. Loews Cineplex Entm't Corp.*, for instance, the district court held that the bankruptcy court's order denying a creditor's motion to compel a post-petition

15

payment under 11 U.S.C. § 356(d)(3) was a final, appealable order because "the Bankruptcy Court [] finally resolve[d] the discrete issue central to this appeal: whether Section 365(d)(3) of the Bankruptcy Code requires immediate payment of the Debtor's $1,000,000 postpetition capital expense obligation. The Court denied immediate payment at the August 9, 2001 hearing . . . as a matter of law . . . ." 2002 WL 535479, at *4. Similarly here, the Bankruptcy Court's April 27 Order conclusively rejected Highland's purely legal contention that the Bankruptcy Court lacked the authority to issue an order restraining creditors from filing involuntary petitions against the Debtors pre-recognition. *See* April 20 Hr'g Tr. 39:6-21, 46:15-47:1. As Highland's position was based on statutory interpretation, rather than facts that would be subject to change over time, the April 27 Order should be deemed final, and appealable as of right.

Accordingly, the Bankruptcy Court's passing reference to the possibility that Highland could seek to attain permission to file involuntary petitions at some indeterminate point in the future, and on an entirely different legal basis than that advocated by Highland in the Limited Objection, does not disturb the April 27 Order's status as a final, appealable order.

## II.    ALTERNATIVELY, IF THE COURT DETERMINES THAT THE APRIL 27 ORDER IS NOT FINAL, THE ORDER IS NEVERTHELESS APPEALABLE UNDER THE COLLATERAL ORDER DOCTRINE

The collateral order doctrine confers courts with jurisdiction over non-final bankruptcy court rulings where the ruling (1) conclusively determines a disputed question, (2) resolves an important issue completely separable from the merits of the action, and (3) would be effectively unreviewable on appeal from a final judgment. *In re 2927 Eighth Ave. Corp.*, 2004 WL 1403362, at *5 (quoting *In re Johns-Manville Corp.*, 824 F.2d 176, 180 (2d Cir.1987)). "In evaluating whether an order involving a bankruptcy proceeding is reviewable, [the Second Circuit] appl[ies] the three [] factors flexibly. . . and [is] guided by concerns of fairness and the efficient administration of the bankruptcy case." *In re Pan Am Corp.*, 16 F.3d 513, 515 (2d Cir.

16

1994).

Here, the first two prongs of the doctrine are easily satisfied as (1) the Bankruptcy Court's April 27 Order conclusively decided that the Bankruptcy Court was authorized to restrain creditors from filing involuntary petitions against the Debtors pre-chapter 15 recognition, *see supra* section I; and (2) whether the Bankruptcy Court was authorized to restrain creditors from filing involuntary petitions is a discrete legal question that is completely separate from, and collateral to the merits of whether the Bankruptcy Court will ultimately recognize the Cayman Proceedings as foreign main proceedings or foreign non-main proceedings.

With respect to the collateral order doctrine's third prong, "[a] court may allow appeal [of bankruptcy court orders] under the collateral order doctrine not only when a ruling is completely unreviewable . . ., but also when allowing appeal is 'consonant with principles of efficiency and fairness.'" *In re 2927 Eighth Ave. Corp.*, 2004 WL 1403362, at *5 (quoting *In re Pan Am Corp.*, 16 F.3d at 515-16). For instance, the court in *In re 2927 Eighth Ave. Corp.* found that the third prong was satisfied where "[a] belated ruling on appeal [] *might* require revisiting the reorganization plan or *might* come too late to have any practical effect on the reorganization." 2004 WL 1403362, at *5 (emphasis added). *See also In re Maynard*, 290 B.R. 67, 70 (D. Vt. 2002) (Third prong satisfied where "the estate's rights will be irretrievably lost in the absence of an immediate appeal"). In this case, a "belated ruling" on whether Highland and other creditors can exercise their statutory right to file an involuntary petition against Ocean Rig pre-recognition *would* effectively moot any appeal and *would* come too late to prevent irreparable harm to Highland and other creditors. A post-recognition appeal would, if the Schemes of Arrangement have already been sanctioned, eliminate Highland's standing to prosecute the Draft Complaint and, as a result, eliminate a bankruptcy trustee's derivative standing under section 544 of the

17

Bankruptcy Code. If a post-recognition appeal is decided before the Schemes of Arrangement are sanctioned, then any award Highland or a bankruptcy trustee obtains from prosecuting the Draft Complaint would only be enforceable against the few assets of the Debtors located in the United States and the majority of the fraudulently transferred assets that are located outside of the United States would be unrecoverable, because the Bankruptcy Court would lack jurisdiction over such assets. Clearly, allowing an appeal is consonant with principles of efficiency and fairness.

The third prong has also been deemed satisfied where, even if the appellant "could get review of the [] order after final judgment is entered . . . [such review] would encumber [the debtor] with more costly and time-consuming litigation, further prolonging the already torpid administration of [the debtor's] estate and depleting the funds available to its creditors." *In re Pan Am Corp.*, 16 F.3d at 515–16. If Highland prevails on its appeal only after a recognition order has already been entered, or after the Schemes of Arrangement have already been sanctioned, the court would be required to engage in a time consuming and costly process to place creditors back in the *status quo ante*, recovering distributions made under the Schemes of Arrangement, reversing corporate actions and repealing Cayman Court orders, thereby further depleting the assets of the estate.

As all three prongs of the collateral order doctrine are satisfied here, the Court should permit this immediate appeal of the April 27 Order.

## III.    IF THE COURT DETERMINES THAT THE APRIL 27 ORDER IS NOT FINAL, THE COURT SHOULD ALSO GRANT LEAVE TO APPEAL UNDER 28 U.S.C. § 158(a)(3)

If the Court determines that the April 27 Order was interlocutory, it should also grant Appellant leave to appeal under 28 U.S.C. § 158(a)(3). When deciding whether to grant leave to appeal an interlocutory order or decree of a bankruptcy court, the district court applies the same

analysis in 28 U.S.C. § 1292(b) that is used for certifying interlocutory review in non-bankruptcy cases. *In re Enron Corp.*, No. 01-16034, 2006 WL 2548592, at *3 (S.D.N.Y. Sept. 5, 2006). Under this analysis, leave to file an interlocutory appeal should be granted when, "(1) the order involves a controlling question of law (2) as to which there is a substantial ground for difference of opinion and (3) an immediate appeal would materially advance the ultimate termination of the litigation." *Urban Retail Properties*, 2002 WL 535479, at *4.

Each of the requirements for interlocutory appeal is met in this case. The April 27 Order: (1) concerns a pure and controlling question of law, namely whether the Bankruptcy Court is authorized to restrain creditors from filing an involuntary petition against debtors pre-recognition; (2) there is substantial grounds for difference of opinion, as the issue at hand is one of first impression, and the Bankruptcy Court repeatedly stated that it did not "think it's an easy issue," April 20 Hr'g Tr. 6:17-22, 50:8-9; and (3) an immediate appeal would materially advance the litigation because if creditors are permitted to file involuntary petitions against the Debtors pre-recognition, such involuntary proceedings can proceed concurrently with the pending Chapter 15 Proceedings and the Cayman Proceedings, forcing the parties to coordinate discovery and other litigation-related activity and address reorganization and transactional issues shared by all three court proceedings.

1.     **The April 27 Order Concerns a Controlling Question of Law**

With respect to the first prong of the section 1292(b) analysis, a "question of law" is one that is "a 'pure' question of law that the reviewing court could decide quickly and cleanly without having to study the record." *In re Enron Corp.*,, 2006 WL 2548592, at *4. A question of law is "controlling" for purposes of this analysis if "either (1) reversal of the bankruptcy court's order would terminate the action, or (2) determination of the issue on appeal would materially affect the outcome of the litigation." *In re Enron Creditors Recovery Corp.*, No. 01-

16034 (AJG), 2009 WL 3349471, at *5 (S.D.N.Y. Oct. 16, 2009).

This appeal presents a question of statutory interpretation, namely whether the Bankruptcy Code empowers a bankruptcy court to issue an order restraining creditors from filing involuntary petitions against debtors pre-chapter 15 recognition. *See*, April 20 Hr'g Tr. 6:17-20. This is a pure legal question that this Court "could decide quickly and cleanly without having to study the record." *In re Enron Corp.*, 2006 WL 2548592, at *4; *see also Enron Creditors Recovery Corp.*, 2009 WL 3349471, at *6 (finding that "matters of statutory interpretation present questions of law, not of fact" and holding that first prong of section 1292(a) analysis was therefore satisfied).

Furthermore, the question of law at issue here is "controlling" because the Bankruptcy Court's determination of whether creditors can file involuntary petitions against the Debtors prior to the entry of an order of recognition will materially affect the Chapter 15 Proceeding as well as any involuntary petition that may ultimately filed, and will also significantly affect the creditors' ability to recover on any fraudulent conveyance award entered in connection with the involuntary bankruptcy case. Under section 1528 of the Bankruptcy Code, the effects of a bankruptcy case that is commenced *after* the recognition order is entered "shall be restricted to the assets of the debtor that are within the jurisdiction of the United States . . . and such other assets that are not subject to the jurisdiction and control of a foreign proceeding that has been recognized under this chapter." 11 U.S.C. §1528. These territorial restrictions are not applicable to cases filed *before* a recognition order is entered. Thus, if the April 27 Order is reversed and Highland and other creditors are permitted to exercise their statutory rights to file an involuntary petition against the Debtors pre-recognition, a worldwide estate will be created under section 541(a) of the Bankruptcy Code over which the Bankruptcy Court will have broad jurisdiction,

including the avoidance and recovery claims that are the subject of the Draft Complaint and the assets that are the subject of those avoidance claims.

By contrast, if Highland and other creditors are not permitted to appeal the April 27 Order and are forced to wait to file an involuntary petition until *after* a recognition order has already been entered (and the Schemes of Arrangement have been sanctioned), Highland and other holders of the Notes will be denied their standing as creditors to file fraudulent conveyance actions under New York Debtor and Creditor Law, will be forced to forfeit their rights to prosecute the Draft Complaint and, even if the Schemes of Arrangement have not yet been sanctioned, will only be able to enforce any award they obtain against the *de minimus* assets of the Debtors and their insiders located in the United States.

Moreover, if the involuntary petitions are filed against the Debtors prior to recognition, "[i]n general, the chapter 7 or chapter 11 case [will be] dominant," *A. Collier Monograph: Ancillary and Other Cross-Border Insolvency Cases Under Chapter 15 of the Bankruptcy Code* (hereinafter, "*Collier Monograph*"), ¶ 12[1][a], and creditors will enjoy the crucial protections of U.S. bankruptcy law. If the petitions are filed after recognition, however, the chapter 15 case will dominate, and the Debtors will be able to avoid many of the important safeguards that U.S. bankruptcy law imposes, including the requirements under section 1129 of the Bankruptcy Code that a plan be proposed in good faith, that all impaired, non-consenting creditors receive at least as much under the plan as they would in a hypothetical liquidation, and that the plan not discriminate unfairly and be deemed fair and equitable. 11 U.S.C. §§ 1129(a)(3), (7), (8) and (b). Accordingly, if the Bankruptcy Court restrains creditors from filing involuntary petitions against the Debtors until after recognition, the Debtors will have a virtually unfettered ability to obtain approval of a scheme that favors insider management by more than $200 million at the

21

expense of third-party creditors (most of whom are U.S. investors).

**2.    The April 27 Order Presents a Substantial Ground for Difference of Opinion, as it Concerns a Difficult Question of First Impression**

The requirement that there be a substantial ground for difference of opinion is met where "(1) there is conflicting authority on the issue, or (2) the issue is particularly difficult and of first impression for the Second Circuit." *In re Enron Corp.*, 2006 WL 2548592, at *4; *see also In re Enron Creditors Recovery Corp.*, 2009 WL 3349471, at *6 ("When a controlling question of law presents an issue of first impression, permission to appeal is often granted").

Here, there is undoubtedly a substantial ground for difference of opinion, as during the April 20 Hearing, Appellees and the Bankruptcy Court both conceded that the narrow question of whether section 1519(a) authorizes the Bankruptcy Court to restrain creditors from filing an involuntary petition against the Debtors pre-chapter 15 recognition is one of first impression. *See* April 20 Hr'g Tr. at 43:22-44:2. The Bankruptcy Court also recognized the difficulty of the question at hand when it deferred decision on the issue during the April 3 Hearing, solicited supplemental briefing on the issue, and then twice pronounced during the April 20 Hearing that it was not "an easy issue." *Id.* at 6:17-22, 50:8-13.

While the Bankruptcy Court ultimately found that it had the authority to enjoin creditors from filing involuntary petitions against the Debtors based on cases that dealt generally with the scope of a bankruptcy court's powers under section 1519(a), such cases are not on point, as none of them involved the filing of involuntary petitions. Because none of the cases that the Bankruptcy Court relied on involved involuntary petitions, those cases did not address the Bankruptcy Code provisions that specifically preserve creditors' rights to file involuntary petitions against debtors in chapter 15 cases and that contemplate the concurrent existence of chapter 15 and chapter 7 or chapter 11 proceedings pre-recognition. *See id.* at 46:15-47:3; *see*

*also In re Ran*, 607 F.3d 1017, 1021 (5th Cir. 2010); *In re Vitro*, S.A.B. de C.V., 455 B.R. 571, 579 (Bankr. N.D. Tex. 2011); *In re Pro-Fit Holdings Ltd.*, 391 B.R. 850, 866 (Bankr. C.D. Cal. 2008).

Specifically, because the cases relied on by Appellees and the Bankruptcy Court did not involve involuntary petitions, they failed to address section 303(b)'s grant to unsecured creditors of the right to seek relief under the Bankruptcy Code, or section 1520(c)'s preservation of creditors' right to file involuntary petitions even post-recognition. The cases also failed to address section 1529, which contemplates that an involuntary case may be filed at any time before or after a petition for recognition has been filed, so long as any relief granted in the chapter 15 case is coordinated with the relief granted in the chapter 7 or chapter 11 case. Nor did the cases address the portion of chapter 15's legislative history that acknowledges creditors' right to file involuntary petitions pre-recognition, explaining that, if necessary and appropriate, "the court has ample authority under [section 1529] and section 305 to exercise its discretion to dismiss, stay or limit a United States case filed after a petition for recognition . . . has been filed but before it has been approved." H.R. Rep. No. 109-31(I), at 117 (2005), 2005 WL 832198.

These Bankruptcy Code provisions, among others, along with the legislative history, all indicate that creditors have an unfettered statutory right to file involuntary petitions against debtors pre-recognition. To the extent a bankruptcy court nevertheless seeks to restrain an involuntary proceeding during the pendency of a chapter 15 proceeding, it must do so under section 305's abstention provision after the involuntary petition has been filed, and after adequate notice and a hearing. Neither Appellees, nor the Bankruptcy Court, pointed to any provision of the Bankruptcy Code or precedent that specifically authorizes courts to preemptively restrain creditors from exercising their statutory right to file an involuntary petition

against a debtor in a chapter 15 proceeding.

There is, therefore, a substantial ground for difference of opinion as to whether section 1519(a) empowered the Bankruptcy Court to restrain creditors from filing involuntary petitions against the Debtors pre-recognition, and appellate review is necessary to expeditiously resolve this important and difficult question of law.

**3.    An Immediate Appeal Would Materially
Advance the Litigation's Ultimate Termination**

"'[A]n immediate appeal is considered to advance the ultimate termination of the litigation if that appeal promises to advance the time for trial or shorten the time required for trial.'" *In re Enron Corp.*, 2006 WL 2548592, at *4. Here, assuming that a recognition order is ultimately entered in this case, section 1520(c) would entitle creditors to file involuntary petitions against the Debtors at that time.  Accordingly, if Appellant is denied leave to appeal, litigation could be prolonged and trial in the contemplated involuntary proceedings would be postponed because creditors will have to wait until after the issue of recognition is fully litigated and decided before filing involuntary petitions against the Debtors.  Immediately resolving this appeal, on the other hand, would allow the involuntary proceeding and the Chapter 15 Proceedings to run concurrently and in a coordinated fashion, thereby avoiding potentially duplicative proceedings and discovery, conserving the Bankruptcy Court's and the parties' resources, forcing parties to resolve their economic issues and advancing the time for trial in the involuntary proceeding.

As immediate appeal would materially advance the litigation's ultimate termination and conserve judicial resources, leave to appeal should be granted in this instance.

24

## CONCLUSION

For all of the foregoing reasons, Highland respectfully requests that the Court find that the April 27 Order of the Bankruptcy Court is a final, appealable order, or in the alternative, that it grant Highland leave to file an interlocutory appeal to this Court from the April 27 Order.

Dated: May 11, 2017
     New York, New York

Respectfully submitted,

VENABLE LLP

By:    /s/ Jeffrey S. Sabin
       Jeffrey S. Sabin
       Kostas D. Katsiris
       Rockefeller Center
       1270 Avenue of the Americas, 24th Floor
       New York, New York 10020
       Telephone: (212) 307-5500

       *Counsel for Highland Capital*
       *Management LP*